IN THE UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Ronald Payne and Mariah Trepagnier, | |
| *On behalf of themselves and those similarly situated*, | Case No.    1:18-cv-1541 |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| RPM Pizza, LLC; RPM Pizza Midwest, RPM Pizza Ventures, LLC; RPM Pizza Ventures II, LLC; LLC; Doe Corporations 1-10; Glenn Mueller; and Richard Mueller, III; | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

## I.    INTRODUCTION

1.    Ronald Payne and Mariah Trepagnier, on behalf of themselves and all similarly-situated individuals, brings this action against Defendants RPM Pizza, LLC; RPM Pizza Midwest, LLC; RPM Pizza Ventures, LLC; RPM Pizza Ventures II, LLC; Doe Corporations 1-10; Glenn Mueller; and Richard Mueller, III. Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Indiana Wage Payment Act ("WPA"), Ind. Code 22-2-5, and the Indiana Wage Deduction Act ("WDA"), Ind. Code 22-2-6.

2.      Defendants comprise the largest Domino's Pizza franchisee in the country.

3.      Defendants own approximately 200 Domino's Pizza stores in Indiana, North Carolina, Mississippi, and Louisiana.

4.      Plaintiff Payne worked for Defendants as a delivery driver in Indianapolis, Indiana from approximately 2015 to approximately July 2016.

5.      Plaintiff Trepagnier worked for Defendants as a delivery driver in New Orleans, Louisiana from October 2017 to January 2018.

6.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the WPA, and the WDA by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

7.      All delivery drivers at the Defendants' stores, including Plaintiffs, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

8.      Plaintiffs bring this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

9.      Plaintiff Payne also brings this action on behalf of himself and similarly situated current and former delivery drivers in Indiana pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Ind. Code 22-2-5, and Ind. Code 22-2-6.

## II.   Jurisdiction and Venue

2

10.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

11.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff Payne's state law claims.

12.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## II.   PARTIES

### PLAINTIFFS

### RONALD PAYNE

13.     Plaintiff Ronald Payne resides in Indianapolis, Indiana. Further, at all times material herein, Plaintiff Payne worked within the boundaries of the Southern District of Indiana.

14.     Plaintiff Payne was an "employee" of all of the Defendants as defined in the FLSA, WPA, and WDA.

15.     Plaintiff Payne has given written consent to join this action.

### MARIAH TREPAGNIER

16.     Plaintiff Mariah Trepagnier resides in New Orleans, Louisiana.

17.     Plaintiff Trepagnier was an "employee" of all of the Defendants as defined in the FLSA.

18.     Plaintiff Trepagnier has given written consent to join this action.

### DEFENDANTS

3

19.     Defendants have jointly employed Plaintiffs and similarly situated delivery drivers at all times relevant.

20.     Defendants operate the RPM Domino's restaurants out of their headquarters at 15384 5th Street, Gulfport, MS 39503.

21.     Each of the Defendants had substantial control over Plaintiffs and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

22.     Defendants are part of a single integrated enterprise.

23.     At all relevant times, the restaurants shared common management and were centrally controlled and/or owned by Defendants.

24.     At all relevant times, all Defendants maintained control over labor relations at the RPM Domino's restaurants.

25.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the RPM Domino's restaurants without retraining.

26.     Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiffs and similarly situated delivery drivers at the RPM Domino's restaurants.

27.     Defendants suffer or permit Plaintiffs and other delivery drivers to work.

28.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers, and also exercise that authority.

29.     During all relevant times, Defendants also exercised operational control over the delivery drivers at the RPM Domino's restaurants, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery

4

drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**RPM Pizza, LLC**

30.     Defendant RPM Pizza, LLC is a Mississippi limited liability company with its principal place of business in Mississippi.

31.     RPM Pizza, LLC owns and operates approximately 200 Domino's restaurants in Mississippi, Louisiana, Indiana, and North Carolina.

32.     RPM Pizza, LLC's principal address is 15384 5th Street, Gulfport, MS 39503.

33.     Glenn Mueller is a manager of RPM Pizza, LLC.

34.     RPM Pizza, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

35.     Upon information and belief, RPM Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

36.     RPM Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

37.     At all relevant times, RPM Pizza, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

38.     RPM Pizza, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA, WPA, and WDA.

39.     At all relevant times, RPM Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

40.     RPM Pizza, LLC's gross revenue exceeds $500,000 per year.

## RPM Pizza Midwest, LLC

41.     Defendant RPM Pizza Midwest, LLC is a Mississippi limited liability company with its principal place of business in Mississippi.

42.     RPM Pizza Midwest, LLC owns and operates approximately 200 Domino's restaurants in Mississippi, Louisiana, Indiana, and North Carolina.

43.     RPM Pizza Midwest, LLC is the corporate entity that appears on Plaintiff Payne's paystubs for work he completed for Defendants.

44.     RPM Pizza Midwest, LLC's principal address is 15384 5th Street, Gulfport, MS 39503.

45.     Glenn Mueller is a manager of RPM Pizza Midwest, LLC.

46.     RPM Pizza Midwest, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

47.     Upon information and belief, RPM Pizza Midwest, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery

6

drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

48.     RPM Pizza Midwest, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

49.     At all relevant times, RPM Pizza Midwest, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

50.     RPM Pizza Midwest, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA, WPA, and WDA.

51.     At all relevant times, RPM Pizza Midwest, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

52.     RPM Pizza Midwest, LLC's gross revenue exceeds $500,000 per year.

## RPM Pizza Ventures, LLC

53.     Defendant RPM Pizza Ventures, LLC is a Mississippi limited liability company with its principal place of business in Mississippi.

54.     RPM Pizza Ventures, LLC owns and operates approximately 200 Domino's restaurants in Mississippi, Louisiana, Indiana, and North Carolina.

55.     RPM Pizza Ventures, LLC's principal address is 15384 5th Street, Gulfport, MS 39503.

56.     Glenn Mueller is a manager of RPM Pizza, LLC.

7

57.     RPM Pizza Ventures, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

58.     Upon information and belief, RPM Pizza Ventures, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

59.     RPM Pizza Ventures, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

60.     At all relevant times, RPM Pizza Ventures, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

61.     RPM Pizza Ventures, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, WPA, and WDA.

62.     At all relevant times, RPM Pizza Ventures, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

63.     RPM Pizza Ventures, LLC's gross revenue exceeds $500,000 per year.

## RPM Pizza Ventures II, LLC

64.     Defendant RPM Pizza Ventures II, LLC is a Mississippi limited liability company with its principal place of business in Mississippi.

65.     RPM Pizza Ventures II, LLC owns and operates approximately 200 Domino's restaurants in Mississippi, Louisiana, Indiana, and North Carolina.

66.     RPM Pizza Ventures II, LLC's principal address is 15384 5th Street, Gulfport, MS 39503.

67.     Glenn Mueller is a manager of RPM Pizza Ventures II, LLC.

68.     RPM Pizza Ventures II, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

69.     Upon information and belief, RPM Pizza Ventures II, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

70.     RPM Pizza Ventures II, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

71.     At all relevant times, RPM Pizza Ventures II, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

72.     RPM Pizza Ventures II, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA, WPA, and WDA.

73. At all relevant times, RPM Pizza Ventures II, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

74. RPM Pizza Ventures II, LLC's gross revenue exceeds $500,000 per year.

**GLENN MUELLER**

75. Defendant Glenn Mueller is an owner and manager of the RPM Domino's restaurants.

76. Glenn Mueller is a manager of RPM Pizza, LLC, RPM Pizza Midwest, LLC, RPM Pizza Ventures, LLC, and RPM Pizza Ventures II, LLC.

77. Glenn Mueller is the CEO of RPM Pizza.

78. Glenn Mueller is individually liable to RPM's delivery drivers under the definitions of "employer" set forth in the FLSA, WPA, and WDA law because he owns and operates the RPM Domino's stores, serves as a manager of the RPM entities, ultimately controls significant aspects of RPM's day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

79. At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had financial control over the operations at each of the RPM stores.

80. At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has a role in significant aspects of the RPM's day to day operations.

81. At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had control over RPM's pay policies.

10

82.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had power over personnel and payroll decisions at the RPM stores, including but not limited to influence of delivery driver pay.

83.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to hire, fire and discipline employees, including delivery drivers at RPM stores.

84.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to stop any illegal pay practices that harmed delivery drivers at the RPM stores.

85.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to transfer the assets and liabilities of RPM.

86.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to declare bankruptcy on behalf of RPM.

87.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to enter into contracts on behalf of each of the RPM stores.

88.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller has had the power to close, shut down, and/or sell each of the RPM stores.

89.     At all relevant times, by virtue of his role as CEO of RPM, Glenn Mueller had authority over the overall direction of each of the RPM stores and was ultimately responsible for their operations.

90.     The RPM stores function for Glenn Mueller's profit.

91.     Glenn Mueller has influence over how the RPM's stores can run more profitably and efficiently.

**RICHARD MUELLER, III**

11

92.     Defendant Richard Mueller, III is an owner and manager of the RPM Domino's restaurants.

93.     Richard Mueller, III is a manager of RPM Pizza, LLC, RPM Pizza Midwest, LLC, RPM Pizza Ventures, LLC, and RPM Pizza Ventures II, LLC.

94.     Richard Mueller, III is the COO of RPM Pizza.

95.     RPM was founded by Richard Mueller, III's father, Richard P. Mueller, Jr.

96.     Richard Mueller, III is individually liable to RPM's  delivery drivers under the definitions of "employer" set forth in the FLSA, WPA, and WDA law because he owns and operates the RPM Domino's stores, serves as a manager of the RPM entities, ultimately controls significant aspects of RPM's day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

97.     At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had financial control over the operations at each of the RPM stores.

98.     At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has a role in significant aspects of the RPM's day to day operations.

99.     At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had control over RPM's pay policies.

100.     At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had power over personnel and payroll decisions at the RPM stores, including but not limited to influence of delivery driver pay.

101.     At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to hire, fire and discipline employees, including delivery drivers at RPM stores.

12

102.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to stop any illegal pay practices that harmed delivery drivers at the RPM stores.

103.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to transfer the assets and liabilities of RPM.

104.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to declare bankruptcy on behalf of RPM.

105.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to enter into contracts on behalf of each of the RPM stores.

106.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III has had the power to close, shut down, and/or sell each of the RPM stores.

107.    At all relevant times, by virtue of his role as COO of RPM, Richard Mueller, III had authority over the overall direction of each of the RPM stores and was ultimately responsible for their operations.

108.    The RPM stores function for Richard Mueller, III's profit.

109.    Richard Mueller, III has influence over how the RPM's stores can run more profitably and efficiently.

**Doe Corporations 1-10**

110.    Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiffs' "employer" under the FLSA, WPA, and WDA law.

111.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## III.   FACTS

### CLASS-WIDE FACTUAL ALLEGATIONS

112.    During all relevant times, Defendants have operated between 150 and 250 Domino's Pizza stores (the "RPM stores").

113.    The primary function of the RPM stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

114.    The RPM stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

115.    Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the RPM stores.

116.    All delivery drivers employed at the RPM stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

117.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the RPM stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

118.    At all relevant times, Plaintiff and similarly situated delivery drivers have been an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

119.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

120.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile

maintenance and parts, financing, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

121.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

122.    The RPM stores do not keep track of their delivery drivers' actual expenses.

123.    The RPM stores do not reimburse delivery drivers for their actual expenses.

124.    The RPM stores do not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

125.    At all relevant times, Plaintiff and other similarly situated delivery drivers were subject to a reimbursement policy that was not adequate to cover their expenses.

126.    Plaintiff Payne and other delivery drivers at the RPM stores in Indiana were reimbursed amount of $1.00 per delivery run (each time the driver left the store to complete a delivery or deliveries), with an additional $.30 per mile when the delivery run was longer than 5 miles round trip.

127.    Plaintiff Trepagnier and other delivery drivers in Louisiana were reimbursed at approximately $.25 or $.26 per delivery.

128.    Plaintiffs and similarly situated delivery drivers typically average approximately 5-10 miles per round-trip delivery.

129.    Plaintiffs and similarly situated delivery drivers typically make approximately 4-6 deliveries per hour.

130.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.  2015: 57.5 cents/mile
   b.  2016: 54 cents/mile
   c.  2017: 53.5 cents/mile
   d.  2018: 54.5 cents/mile

131.     As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA, WPA, and WDA law.

132.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the RPM stores.

133.     All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

134.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

135.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

136.    Defendants have willfully failed to pay federal and Indiana state minimum wage to Plaintiffs and similarly situated delivery drivers at the RPM stores.

**PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS**

**RONALD PAYNE**

137.    Plaintiff Payne worked at RPM from approximately 2015 until July 2016.

138.    Plaintiff Payne worked for RPM as a delivery driver in Indianapolis, Indiana.

139.    Plaintiff Payne was paid minimum wage as an hourly rate.

140.    Plaintiff Payne delivered pizza and other food items to Defendants' customers' homes and businesses.

141.    When he was not making deliveries, Plaintiff Payne worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

142.    At all relevant times, Plaintiff Payne received a per delivery reimbursement amount intended to cover his expenses.

143.    Plaintiff Payne was reimbursed $1.00 for each delivery run he completed, and an additional $.30 per mile for each mile in excess of 5 miles on a given delivery run.

144.    Plaintiff Payne was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

145.    Plaintiff Payne was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

146.    Plaintiff Payne purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

147.    Defendants did not track the actual expenses incurred by Plaintiff Payne.

148.    Defendants did not reimburse Plaintiff Payne based on his actual delivery-related expenses.

149.    Plaintiff Payne was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

150.    During Plaintiff Payne's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Payne for automobile and other job-related expenses.

151.    Plaintiff Payne regularly makes approximately 3 to 5 deliveries per hour during the hours he works as a delivery driver.

152.    Plaintiff Payne regularly drove approximately 5 to 10 miles round trip per delivery.

153.    Thus, Defendants' average effective reimbursement rate for Plaintiff Payne on a six-mile delivery, for example, was approximately $.216 per mile ($1.30 per delivery / 6 average miles per delivery).

154.    In 2016, for example, the IRS business mileage reimbursement has been $.54 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff Payne's automobile expenses, every mile driven on the job

decreased his net wages by approximately $.324 ($.54 - $.216) per mile. On a six-mile delivery, Defendants under-reimbursed him about $1.97 per delivery ($.329 x 6 average miles).

155.    Thus, while making deliveries, Plaintiff Payne consistently "kicked back" to Defendants approximately $7.90 per hour ($1.97 per delivery x 4 deliveries per hour).

156.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Payne minimum wage as required by law.

## Mariah Trepagnier

157.    Plaintiff Trepagnier worked at RPM from approximately October 2017 to January 2018.

158.    Plaintiff Trepagnier worked for RPM as a delivery driver in New Orleans, Louisiana.

159.    Plaintiff Trepagnier was paid minimum wage as an hourly rate.

160.    Plaintiff Trepagnier delivered pizza and other food items to Defendants' customers' homes and businesses.

161.    When she was not making deliveries, Plaintiff Trepagnier worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

162.    At all relevant times, Plaintiff Trepagnier was reimbursed at $.25 or $.26 per mile.

163.    Plaintiff Trepagnier was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

164.    Plaintiff Trepagnier was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

165.    Plaintiff Trepagnier purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

166.    Defendants did not track the actual expenses incurred by Plaintiff Trepagnier.

167.    Defendants did not reimburse Plaintiff Trepagnier based on his actual delivery-related expenses.

168.    Plaintiff Trepagnier was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

169.    During Plaintiff Trepagnier's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Trepagnier for automobile and other job-related expenses.

170.    Plaintiff Trepagnier regularly makes approximately 3 deliveries per hour during the hours she works as a delivery driver.

171.    In 201, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff Trepagnier's automobile expenses, every mile driven on the job decreased his net wages by approximately $.295 ($.545 - $.25) per mile. On a six-mile delivery, Defendants under-reimbursed her about $1.77 per delivery ($.295 x 6 average miles).

172.    Thus, while making deliveries, Plaintiff Trepagnier consistently "kicked back" to Defendants approximately $5.31 per hour ($1.77 per delivery x 3 deliveries per hour).

173.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Trepagnier minimum wage as required by law.

## IV.   COLLECTIVE ACTION ALLEGATIONS

174.    Plaintiffs bring the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the RPM stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

175.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

176.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

177.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

178.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

179.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

21

180.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

181.    The FLSA Collective members are readily identifiable and ascertainable.

182.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

183.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## V.    CLASS ACTION ALLEGATIONS

184.    Plaintiff Payne brings the Counts II and III under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the RPM Domino's Pizza stores in the State of Indiana between May 15, 2015 and the date of final judgment in this matter ("Rule 23 Class").

185.    Excluded from Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

186.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

22

187.    For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from Defendants.

188.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

189.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

190.    There are more than 50 Rule 23 Class members.

191.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

192.    Plaintiff Payne and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

193.    Plaintiff Payne and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the WPA and WDA.

194.    Plaintiff Payne and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

195.    Plaintiff Payne and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

23

196.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff Payne is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

197.    Plaintiff Payne is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

198.    Plaintiff Payne is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

199.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

200.    Upon information and belief, Defendants and other employers throughout the state violate WPA and WDA. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

201.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

202.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff Payne and the Rule 23 Class members individually and include, but are not limited to:

e.   Whether Defendants paid Plaintiff Payne and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

f.   Whether Plaintiff Payne and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

g.   Whether Defendants took deductions or assignments from the wages of the Rule 23 Class members in violation of Ind. Code 22-2-6, *et seq*.;

h.   Whether Plaintiff Payne and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

i.   Whether Plaintiff Payne and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

j.   Whether Defendants reimbursed Plaintiff Payne and the Rule 23 Class members for their actual expenses;

k.   Whether Defendants reimbursed Plaintiff Payne and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

l.   Whether Defendants reimbursed Plaintiff Payne and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

m.   Whether Defendants failed to pay Plaintiff Payne and the Rule 23 Class all wages earned in a timely manner as described in Ind. Code 22-2-5-1;

n.   Whether Defendants were acting in good faith when they failed to pay Plaintiff Payne and the Rule 23 Class in accordance with Ind. Code 22-2-5-2; and

o.   The nature and extent of class-wide injury and the measure of damages for those injuries.

203.   In recognition of the services Plaintiff Payne has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## VI.   CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

204.   Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

205.   Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

206.   Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

207.   Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

208.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

209.   Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

26

210.     As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Earned Wages – Ind. Code 22-2-5**
**(On Behalf of Plaintiff Payne and Rule 23 Class)**

211.     Plaintiff Payne restates and incorporates the following allegations as if fully rewritten herein.

212.     Defendants paid Plaintiff Payne and Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

213.     Ind. Code 22-2-5, *et seq.*, requires that all employers, including Defendants, pay their employees the amount due to the employee at least semimonthly or biweekly.

214.     Ind. Code 22-2-5, *et seq.*, requires that payment shall be made for all wages earned to a date not more than 10 business days prior to the date of payment.

215.     Ind. Code 22-2-5-2, allows employees who have been denied the timely payment of wages under Ind. Code 22-2-5-1 to recover their unpaid wages, costs and attorneys fees, and allows employees to recover an additional 2 times their unpaid wages if the employer was not acting in good faith when they failed to pay all wages due to the employee.

216.     Defendants have failed to pay Plaintiff Payne and the Rule 23 Class their earned wages in accordance with Ind. Code 22-2-5-1.

217.     By not paying minimum wage to Plaintiff Payne and the Rule 23 Class, Defendants have violated Ind. Code 22-2-5.

218.     Defendants did not act in good faith in failing to pay Plaintiff Payne and the Rule 23 Class their earned wages.

219.     Specifically, Defendants have already been sued by their delivery drivers, in 2013, who asserted claims very similar to those asserted here. Despite that lawsuit and other lawsuits like it around the country, Defendants continue to pay their delivery drivers under a flawed reimbursement system.

220.     As a result of Defendants' failure to pay Plaintiff Payne and the Rule 23 Class in accordance with Ind. Code 22-2-5, Plaintiff and the Rule 23 Class are entitled to unpaid wages, unreimbursed expenses, an additional two times unpaid wages as damages, costs, and attorneys' fees.

**Count 3**
**Unlawful Deductions – Ind. Code 22-2-6, *et seq*.**
**(On Behalf of Plaintiff Payne and the Rule 23 Class)**

221.     Plaintiff Payne restates and incorporates the foregoing allegations as if fully rewritten herein.

222.     Ind. Code 22-2-6-2 limits the type and amount of deductions and assignments employers are permitted to take from an employees' wages.

223.     Defendants violated Ind. Code 22-2-6-2 by taking deductions from the wages of Plaintiff and the Rule 23 Class members for automobile expenses without the prior consent of Plaintiff and the Rule 23 Class members.

224.     As a result of Defendants' failure to pay Plaintiff Payne and the Rule 23 Class in accordance with Ind. Code 22-2-6, Plaintiff Payne and the Rule 23 Class are entitled to unpaid

wages, unreimbursed expenses, an additional two times unpaid wages as damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs Ronald Payne and Mariah Trepagnier pray for all of the following relief:

A.   Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.   Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.   Designation of Plaintiff Payne as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.   A declaratory judgment that the practices complained of herein are unlawful under Ind. Code 22-2-5, *et seq*. and Ind. Code 22-2-6, *et seq*.

F.   An award of damages under the WPA and WDA in the amount of unpaid wages, unlawful deductions, attorneys' fees, and costs.

G.   An award under Indiana law of an additional two times unpaid wages as damages under Ind. Code 22-2-5-2.

H.   An award of prejudgment and post-judgment interest.

I.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

J.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,


/s/ Jay Meisenhelder
Jay Meisenhelder
Employment & Civil Rights Legal Services, P.C.
650 North Girls School Road, Suite B20
Indianapolis, IN 46214
317-231-5193 (Phone)
317-982-5463 (Fax)
(*jaym@ecrls.com*)

Andrew Biller (Lead Counsel)(pro hac vice
application forthcoming)
Andrew Kimble (pro hac vice application
forthcoming)
Philip Krzeski (pro hac vice application
forthcoming)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
www.msdlegal.com

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Jay Meisenhelder
Jay Meisenhelder