IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Ronald Payne and Mariah Trepagnier, *On behalf of themselves and those similarly situated,* <br><br> Plaintiffs, <br><br> vs. <br><br> RPM Pizza, LLC; RPM Pizza Midwest, LLC; RPM Pizza Ventures, LLC; RPM Pizza Ventures II, LLC; Doe Corporations 1-10; Glenn Mueller; and Richard Mueller, III; <br><br> Defendants. | CASE NO. 1:18-cv-01541-TWP-MJD |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY, AND TO COMPEL INDIVIDUAL ARBITRATION

## I.  INTRODUCTION

Pursuant to Rules 12(b)(1), (3), and (6), of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), Defendants RPM Pizza, LLC, RPM Pizza Midwest, LLC, RPM Pizza Ventures, LLC, RPM Pizza Ventures II, LLC, Glenn Mueller, and Richard Mueller, III (collectively "Defendants") hereby submit this Memorandum in Support of their Motion to Dismiss, or in the Alternative, to Stay, and to Compel Individual Arbitration of Plaintiffs', Ronald Payne ("Payne") and Mariah Trepagnnier ("Trepagnnier") (collectively, "Plaintiffs"), claims asserted in their Class and Collective Action Complaint against Defendants.[1]

---

[1] Defendants file this Motion to Dismiss, or in the Alternative, to Stay, and to Compel Individual Arbitration in lieu of filing an Answer, which is proper under Rules 12(a)-(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(a) (stating that when a defendant files a Rule 12(b) motion,

1

Plaintiffs' claims arise out of a transaction involving interstate commerce and are subject to binding arbitration agreements that are governed by the FAA. Plaintiffs' claims, therefore, should be dismissed and compelled to arbitration on an individual basis.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Class and Collective Action Complaint.

On May 18, 2018, Plaintiffs filed this action against Defendants in the United States District Court for the Southern District of Indiana, Indianapolis Division. Plaintiffs' claims arise out of their employment with Defendants.[2] The Complaint alleges the Defendants failed to compensate Plaintiffs and similarly-situated individuals the applicable minimum wage as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Indiana Wage Payment Act, Ind. Code § 22-2-5 ("WPA"), and the Indiana Wage Deduction Act, Ind. Code § 22-2-6 ("WDA") by failing to adequately reimburse delivery drivers for their deliver-related expenses. *See* Compl. at ¶¶ 1, 6. Plaintiffs bring their FLSA claim as a putative collective action under Section 216(b) of the FLSA, and their state law claims as a putative class action under Federal Rule of Civil Procedure 23. *See* Compl. at ¶¶ 8-9.

---

its deadline for filing an answer is tolled until that motion is decided); *Continental Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (holding that district court properly proceeded under Rule 12(b)(3) in dismissing case subject to arbitration agreement); 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRAC. & PROC. § 1360 (3d ed. 2004) (recognizing accepted practice of filing motion to stay and compel arbitration in lieu of filing answer) (collecting cases).

[2] Plaintiff Ronald Payne was employed by Defendant RPM Pizza Midwest, LLC, and Plaintiff Mariah Trepagnier was employed by Defendant RPM Pizza, LLC. *See* Ex. A, Payne Agreement; Ex. B, Trepagnier Agreement; Ex. C, Mueller Dec. at ¶¶ 10, 13.

## 2. **Payne's Arbitration Agreement.**

On January 28, 2015, at the beginning of his employment, Payne and Defendant RPM Pizza Midwest, LLC, entered into an arbitration agreement (the "Payne Agreement").[3] Ex. A, Payne Agreement. The Payne Agreement is expressly governed by the FAA. *See* Ex. A, at Sec. I. The Payne Agreement is supported by consideration consisting of the Parties' mutual agreement to arbitrate, and Defendants' offer to employ Payne. *See* Ex. A, at Sec. I.

Pursuant to the Payne Agreement, the Parties mutually agreed to resolve certain employment-related disputes by final and binding arbitration. Ex. A, at Section II. The definition of "Covered Claims" states, in pertinent part:

> Covered claims include past, current and future disputes or controversies related to a Team Member's job application, hiring, terms and conditions of employment, job assignments, **payment of wages, benefits, forms of compensation**, or termination from the Company. Covered claims include those brought pursuant to an alleged contract, in tort, pursuant to statute, regulation, or ordinance, or in equity or otherwise and include, but are not limited to, the following . . .
>
> (3) Any claim, dispute, and/or controversy under federal, state, or local laws regarding payment of wages, compensation practices, or benefit plans, including, but not limited to, **claims for payment or demand for reimbursement of alleged expenses relating to employment with the Company**. Said claims may arise under federal law, including but not limited to the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), or any state wage payment laws.

Ex. A, at Sec. II.A (emphasis added). The Payne Agreement also contains an express class action waiver:

---

[3] Defendant RPM Pizza Midwest, LLC entered into the Arbitration Agreement with Payne. The Payne Agreement specifically defines "the Company" to include Defendant RPM Pizza Midwest, LLC's "parents, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect), team members, vendors, and agents. *See* Ex. A, at Section I. Therefore, the other Defendants in this action have an equal right to enforce the Payne Agreement. *See* Ex. C, Mueller Dec. at ¶¶ 2, 5-7.

3

> **A.  Form of Arbitration and Waiver of Multi-Plaintiff Litigation.**  In any arbitration, any claim shall be arbitrated only on an individual basis and not on a class or private attorney general basis.  The Team Member and the Company expressly waive any right to arbitrate as a class representative, as a class member, in a collective action, or in or pursuant to a private attorney general capacity, and there shall be no joinder or consolidation of parties.  All arbitration shall be brought on a separate and individual basis.  In the event an arbitrator or court determines an issue may be brought as a class or in a collective action, then this Agreement is void and null except for Section V., Waiver of Jury Trial, and such class or collective action must be brought in the appropriate court system and not in arbitration.

Ex. A, at Sec. III.A.  The Payne Agreement further provides that "The Company and the Team Member agree that if either pursues a covered claim against the other by any method under [*sic*] than the arbitration provided herein, and an exception does not apply, the responding party is entitled to a dismissal, stay and/or injunctive relief regarding such action, and the recovery of all damages in responding, to include related attorneys' fees, costs, and losses."  Ex. A, at Sec. IV.  The Payne Agreement also contains an opt-out provision.  *See* Ex. A., at Sec. VI.

Payne electronically signed the Payne Agreement on January 28, 2015, acknowledging that he agreed to submit all covered disputes to arbitration, unless he timely sent an opt-out letter.  *See* Ex. A, at ACKNOWLEDGMENT OF ARBITRATION; Ex. C., at ¶ 11.  Payne did not submit an opt-out letter pursuant to the procedure set forth in the Payne Agreement.  *See* Ex. A, at Sec. VI; Ex. C, at ¶ 12.

3. **Trepagnnier's Arbitration Agreement.**

On September 27, 2017, at the outset of her employment, Trepagnnier and Defendant RPM Pizza, LLC, entered into an arbitration agreement (the "Trepagnnier Agreement").[4]  Ex. B,

---

[4] Like the Payne Agreement, the Trepagnnier Agreement defines "the Company" to include Defendant RPM Pizza, LLC's "parents, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect), team members, vendors, and agents." Ex. B, at Sec. I. Therefore, the other Defendants in this action have an equal right to enforce the Trepagnnier Agreement.  *See* Ex. C, Mueller Dec. at ¶¶ 2, 5-7.

4

Trepagnnier Agreement.  Like the Payne Agreement, the Trepagnnier Agreement is expressly governed by the FAA and is supported by consideration consisting of Defendants' mutual agreement to arbitrate and offer of employment to Trepagnnier.  *See* Ex. B, at Sec. I.

The Trepagnnier Agreement is nearly identical to the Payne Agreement in all material respects, and includes the same definition of "Covered Claims" and an express class action waiver.  *See* Ex. B, at Secs. II.A., III.A.  The Trepagnnier Agreement also contains an opt-out procedure.  *See* Ex. B., at Sec. VI.

Trepagnnier electronically signed the Trepagnnier Agreement on September 27, 2017, acknowledging that she agreed to submit all covered disputes to arbitration, unless she timely sent an opt-out letter.  *See* Ex. B, at ACKNOWLEDGMENT OF ARBITRATION; Ex. C., at ¶ 14.  Trepagnnier did not submit an opt-out letter pursuant to the procedure set forth in the Trepagnnier Agreement.  *See* Ex. B, at Sec. VI; Ex. C, at ¶ 15.

### III.     STANDARD OF REVIEW

The FAA provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.[5]  Section 4 of the FAA authorizes a federal court to "make an order directing the parties to proceed to arbitration" upon a showing that "the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.

---

[5] There is no dispute that the Arbitration Agreements are governed by the FAA, as they affect interstate commerce and the Parties agreed to adopt the FAA to govern the Arbitration Agreements.  *See* Ex. C, at ¶¶ 5-6; *Gunn v. Uber Techs., Inc.*, C/A No. 1:16-cv-01668-SEB-MJD, 2017 WL 386816, at *3 ("The parties expressly adopted the FAA to govern the Arbitration Provision of their Agreement and Plaintiff 'has no way around this language.'") (quoting *Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 566 (7th Cir. 2015)).

In enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration and required that all courts rigorously enforce agreements to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Recognizing this legislative mandate, the United States Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1085 (Ind. Ct. App. 2014). Further, arbitration agreements in the employment context are broadly enforceable under the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122–24, 121 S.Ct. 1302, 1312-1313, 149 L.Ed.2d 234 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context."); *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657.

"The burden to avoid compelled arbitration is analogous to that required to successfully oppose summary judgment under Rule 56." *Rohde v. Family Dollar Stores of Indiana, LLC*, C/A No. 1:17-cv-225-TLS, 2017 WL 5467155, at *1 (N.D. Ind. Nov. 13, 2017) (citing *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). That is, "the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## IV. ARGUMENT

In the Seventh Circuit, the Court must compel arbitration under the FAA, if the moving party can demonstrate: "a written agreement to arbitrate, a dispute within the scope of the

6

arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000).

Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011). "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Thus, like any other contracts, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996).

In this case, all three required elements to enforce an arbitration agreement exist and, therefore, the Court should compel arbitration on an individual basis.

### A. The Arbitration Agreements are Valid and Enforceable.

In Indiana, the "basic elements of a contract" are "an offer, acceptance, a manifestation of mutual assent, and consideration." *Johnson v. Harvest Mgmt. Sub TRS Corp.*, C/A No. 3:15-cv-00026-RLY-WGH, 2015 WL 5692567, at *2 (S.D. Ind. Sept. 25, 2015) (quoting *McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 134 (Ind. Ct. App. 2014)). Here, all of the elements of contract formation are present. Defendants made an offer of employment to Plaintiffs, contingent upon Plaintiffs signing the Arbitration Agreements. *See* Ex. A, Ex. B, Ex. C, at ¶¶ 11, 14. Plaintiffs accepted the offer and manifested their assent by signing[6] the Arbitration

---

[6] Plaintiffs' electronic signatures on the Arbitration Agreements has the same legal effect as if they

Agreements and working for Defendants. *See id.*; *see also Johnson*, 2015 WL 5692567, at *4 ("Plaintiff expressed assent to the Agreement by not opting-out and continuing his employment with Defendant for several months.").

Finally, sufficient consideration was exchanged in the form of Defendants' mutual agreement to arbitrate disputes and its agreement to employ Plaintiffs. *See, e.g., Gibson*, 121 F.3d at 1131 ("consideration for one party's promise to arbitrate is the other party's promise to do the same."); *Rohde*, 2017 WL 5467155, at *4 ("Courts have recognized that 'a mutual promise to arbitrate future disputes constitutes consideration.'") (quoting *Johnson*, 2015 WL 5692567, at *4; *see also Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636-37 (7th Cir. 1999) (holding that an employer's promise to be bound by the arbitration process itself serves as mutual consideration'); *Nuzzi v. Coachmen Indus., Inc.*, C/A No. 3:09-cv-116, 2009 WL 3851364, at *5 (N.D. Ind. Nov. 16, 2009) (noting that consideration exists where 'the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration'); *Jenks v. Workman*, C/A No. 99-cv-1389, 2000 WL 962821, at *5 (S.D. Ind. June 22, 2000)).

### B.     Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements.

Plaintiffs' claims in this case fall squarely within the definition of "Covered Claims" under the Arbitration Agreements. *See, e.g., Johnson*, 2015 WL 5692567, at *6 ("Arbitration clauses containing language such as 'arising out of' are 'extremely broad' and 'necessarily create a presumption of arbitrability.") (quoting *Faulkenberg*, 637 F.3d at 810-11)). The Arbitration Agreements specifically contemplated Plaintiffs' claims both under the FLSA and Indiana state

---

had signed the Arbitration Agreements manually. *See, e.g., Rohde*, 2017 WL 5467155, at *4 ("assent of the Arbitration Agreement was a condition of employment, and the Plaintiff assented when she electronically signed it."); Indiana Uniform Electronic Transactions Act, IND. CODE § 26-2-8-101 *et seq.* ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

law. *See* Exs. A & B, at Sec. II.A.(3). The express language of the Arbitration Agreements requires Plaintiffs to arbitrate these claims, and to do so on an individual, rather than a class or collective action basis. *See* Exs. A & B, at Sec. III.A. Therefore, this Court should enforce the Arbitration Agreements and compel Plaintiffs to arbitrate their claims on an individual basis.

### C. Plaintiffs Have Refused to Arbitrate Their Claims.

By bringing their Complaint in this Court, rather than arbitrating their claims on an individual basis pursuant to the Arbitration Agreements, Plaintiffs have evidenced a refusal to arbitrate their claims. *See, e.g., Rohde*, 2017 WL 5467155, at *5 ("by filing the Complaint, [plaintiff] has demonstrated a refusal to arbitrate her claims."); *Johnson*, 2015 WL 5692567, at *6 ("refusal is evident by Plaintiff's briefing on this motion."). Therefore, this Court should enforce the Arbitration Agreements and compel Plaintiffs to bring their claims in arbitration on an individual basis.

### D. The Court Should Compel Arbitration on an Individual Basis.

Recently, the United States Supreme Court upheld the validity of class and collective action waivers in the employment arbitration context. *See Epic Sys. Corp. v. Lewis*, __ S.Ct. __, 2018 WL 2292444, at *17 (May 21, 2018). The Supreme Court noted that "[u]ntil a couple of years ago, courts more or less agreed that arbitration agreements like those before us [employment arbitration agreements containing class action waivers] must be enforced according to their terms." *Id.* at *4. In recent years, however, some courts had started to invalidate arbitration agreements based on an interpretation of the National Labor Relations Act ("NLRA") holding that class action waivers violate the Act. *See id.* at *5.

The Supreme Court noted that Congressional intent "require[s] courts to respect and enforce agreements to arbitrate" as well as "direct[s] them to respect and enforce the parties'

9

chosen arbitration procedures." *Id.* ("we have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conduced." (emphasis in original)).  Ultimately, the Supreme Court rejected the argument that class action waivers are invalid under the NLRA, upholding the FAA's mandate that courts must enforce arbitration agreements as written.  *See id.* at *17.

Based on the Supreme Court's ruling, the class action waivers contained in the Arbitration Agreements are effective and enforceable.  Moreover, the Trepagnnier Agreement dictates that the Court, not an arbitrator, must decide the validity of the class action waiver.  *See* Ex. B, Sec. III.E.  Pursuant to the Supreme Court's decision in *Epic Systems*, the Court must "respect and enforce the parties' chosen arbitration procedures."  *Id.* at *5.  Therefore, this Court should compel Plaintiffs to file their claims in arbitration on an individual, rather than on a class or collective action, basis.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request an order: (1) compelling Plaintiffs to arbitrate their claims on an individual basis in accordance with the Arbitration Agreements; and (2) dismissing, or in the alternative, staying this action pending arbitration.

                                Respectfully submitted,

                                */s/ Todd B. Logsdon*
                                Todd B. Logsdon
                                FISHER & PHILLIPS LLP
                                220 West Main Street, Suite 1700
                                Louisville, Kentucky 40202
                                Telephone:  (502) 561-3990
                                Facsimile:  (502) 561-3991
                                E-mail:  tlogsdon@fisherphillips.com

FPDOCS 34100478.2

        J. Hagood Tighe
*(pro hac vice application forthcoming)*
FISHER & PHILLIPS LLP
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone:  (803) 255-0000
Facsimile:  (803) 255-0202
E-mail:  htighe@fisherphillips.com

Kathleen McLeod Caminiti
*(pro hac vice application forthcoming)*
FISHER & PHILLIPS LLP
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Telephone:  (908) 516-1050
Facsimile:  (908) 516-1051
E-mail:  kcaminiti@fisherphillips.com

COUNSEL FOR DEFENDANTS

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2018, I electronically filed the foregoing Memorandum in Support of Motion to Dismiss, or in the Alternative, to Stay, and to Compel Individual Arbitration with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to:

> Jay Meisenhelder, Esq.
> EMPLOYMENT & CIVIL RIGHTS LEGAL SERVICES, P.C.
> 650 North Girls School Road, Suite B20
> Indianapolis, IN  46214
> Telephone:  (317) 231-5193
> Facsimile:  (317) 982-5463
> E-mail:  jaym@ecrls.com
>
> COUNSEL FOR PLAINTIFFS

I further certify that on June 1, 2018, a true and correct copy of the foregoing Memorandum in Support of Motion to Dismiss, or in the Alternative, to Stay, and to Compel Individual Arbitration was served, via United States Mail, postage pre-paid, upon the following:

> Andrew Biller, Esq.
> Andrew Kimble, Esq.
> Philip Krzeski, Esq.
> MARKOVITS, STOCK & DEMARCO, LLC
> 3825 Edwards Road, Suite 650
> Cincinnati, OH  45209
> Telephone:  (513) 651-3700
> Facsimile:  (513) 665-0219
> E-mail:  abiller@msdlegal.com
> E-mail:  akimble@msdlegal.com
> E-mail:  pkrzeski@msdlegal.com
>
> COUNSEL FOR PLAINTIFFS

*/s/ Todd B. Logsdon*
COUNSEL FOR DEFENDANTS